**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **WESTERN SURETY CO.,** | : | |
|     Plaintiff | : | Civil Action No. 1:07-CV-1551 |
| | : | |
| v. | : | (Chief Judge Kane) |
| | : | |
| **WGG, INC., et al.,** | : | |
|     Defendants | : | |

## MEMORANDUM

Before the Court is Plaintiff Western Surety Co.'s motion to dismiss Defendants' amended counterclaim for failure to state a claim upon which relief can be granted. (Doc. No. 11.) For the reasons that follow, Plaintiff's motion will be denied.

**I.   BACKGROUND**

Plaintiff Western Surety Co. ("Western") brought this action against Defendants WGG, Inc., IBE Construction Inc., and Robert Carlson (collectively "WGG") for indemnification based upon a general agreement of indemnity entered into by the parties in December 2001. (Compl. ¶ 7.) Pursuant to that indemnity agreement, Western issued a bond for a construction project, naming WGG as a principal and Donohoe Construction Co. as an obligee, and in exchange for Western's issuance of the bond, WGG agreed to "indemnify and save [Western] harmless from and against every claim, demand, liability, cost, charge, suit, judgment and expense which [Western] may pay or incur" in connection with the bond. (Compl. Ex. A.) In addition, the indemnity agreement provided that Western had "the exclusive right to determine for itself and [WGG] whether any claim or suit brought against [Western] or [WGG] upon any such bond shall be settled or defended and its decision shall be binding and conclusive upon [WGG]." (Id.)

### A.     The Northern Building Products Cases

In 2003 and 2004, Northern Building Products (Northern is not a party to this action) filed separate lawsuits against WGG and Western.  In the first, on August 12, 2003, Northern sued WGG in New Jersey state court for outstanding sums owed by WGG for services performed and materials furnished by Northern in connection with the construction project. After WGG removed the case to the United States District Court for the District of New Jersey, the case was transferred to this Court and docketed as *Northern Building Products, Inc. v. WGG, Inc.*, Civil Action No. 1:04-CV-913 (hereinafter the "WGG lawsuit").  In the second action, in April 2004, Northern sued Western directly in this Court, alleging that Western was liable as WGG's surety.  That action was docketed as *Northern Building Products, Inc. v. Western Surety Company*, Civil Action No. 1:04-CV-926 (hereinafter the "Western lawsuit").  Northern sought damages in the amount of approximately $176,000 in each suit.

According to WGG, when Northern filed the WGG lawsuit, WGG retained Robert P. Ewing as counsel.  In April 2004, after Northern filed the Western lawsuit, Western tendered its defense of the suit to WGG pursuant to the Indemnity Agreement.  Under the terms of a separate agreement signed on May 11, 2004 (the "tendering agreement"), Western and WGG agreed that Ewing would enter an appearance on Western's behalf in the Western lawsuit, and that Western would "rely upon [Ewing's] professional opinion that [Western] has a meritorious defense to the claim."  (Am. Answer and Counterclaim ("A&C") Ex. C.)  Western and WGG further agreed that if Ewing learned of a potential conflict of interest he would "immediately advise [Western] of [the conflict] and provide [Western] an opportunity to determine whether it wishe[d] to select other counsel to represent it."  (Id.)

The tendering agreement notwithstanding, Ewing failed to file a response to the complaint in the Western Lawsuit on Western's behalf.  Accordingly, on Northern's motion, the Court granted default judgment against Western.  Thereafter, Western filed a motion to set aside default judgment, which the Court granted, though the Court ordered Western to pay Northern $10,916.60 for costs and attorney's fees.  Western then filed an answer to Northern's complaint.  (Western Lawsuit, Doc. No. 45.)

Meanwhile, in the WGG lawsuit, the case proceeded routinely.  On October 26, 2004, WGG filed an answer to the complaint and asserted a counterclaim based on more than $285,187 in damages that WGG allegedly incurred "as a direct result of breaches of contract by [Northern] in connection with the [construction project]."  (WGG Lawsuit, Doc. No. 16.)  According to WGG, it belatedly learned that its counterclaim failed to account for approximately $172,193 in additional damages, though the counterclaim was never amended in the WGG lawsuit despite Ewing's knowledge of the additional damages.  (A&C ¶ 56.)  Moreover, in the answer filed in the Western lawsuit, Ewing did not present a counterclaim.

B.     **The Settlement Conference**

Eventually, after some further proceedings in both cases, at the request of counsel, the Western and WGG lawsuits were consolidated for the purposes of a settlement conference to be conducted by Magistrate Judge Mannion on June 2, 2006, at which WGG and Western were represented by Ewing, Robert Carlson on behalf of WGG, and David Matthews, a representative of Western.  At the conference, Ewing and Matthews asserted that they had authority—over Carlson's objection—to settle both the WGG and Western lawsuits in the amount of $150,000, and a settlement was reached and ultimately approved by Magistrate Judge Mannion.  According

to WGG, Carlson objected to the settlement because WGG's counterclaim against Northern would be forfeited by the agreement.

On July 21, 2006, Western submitted a letter to WGG stating a demand for $150,000. (A&C Ex. D.) In response, WGG responded that under its interpretation of the indemnity agreement, Western could settle claims brought *against* Western and WGG, but it had no authority to settle claims brought *by* WGG against Northern. WGG further argued that "Mr. Ewing ha[d] an inherent conflict of interest and the matter should not have been settled without a resolution of said conflict and WGG's separate and independent rights to his counterclaim. Even though Mr. Carlson signed a Waiver of the conflict, he did so without the advice of counsel and without the understanding how the Waiver would impact his counterclaim." (A&C Ex. E.) On August 2, 2006, Western and Northern executed a settlement agreement and mutual release in both the Western and WGG lawsuits.

### C.     The Instant Case

On August 22, 2007, Western brought the instant action against WGG with claims for: indemnification; common-law identification; specific performance; a *quia timet* injuction; contractual exoneration; and common-law exoneration. (Doc. No. 1.) On September 19, 2007, WGG filed an answer with affirmative defenses and a counterclaim (Doc. No. 8), which it amended on October 8, 2007 (Doc. No. 9). In the amended answer, WGG asserts eleven affirmative defenses and a counterclaim for an alleged breach of a duty of good faith and fair dealing. (Doc. No. 9.)

Western filed the instant motion to dismiss WGG's counterclaim on the grounds that Pennsylvania law does not recognize a cause of action for breach of good faith and fair dealing

in the context of surety agreements. In addition, Western argues that WGG's counterclaim fails as a matter of law because based on the facts alleged, Western's actions were consistent with its contractual rights. (Doc. Nos. 11, 12.) WGG filed a brief in opposition to the motion (Doc. No. 13), to which Western timely replied (Doc. No. 14).

## II.     STANDARD OF REVIEW

A motion to dismiss filed pursuant to Federal Rule of Civil Procedure 12(b)(6) is properly granted when, accepting all factual allegations and inferences as true, the moving party is entitled to judgment as a matter of law. Markowitz v. Northeast Land Co., 906 F.2d 100, 103 (3d Cir. 1990). Although the moving party bears the burden of showing that no claim has been stated, Hedges v. United States, 404 F.3d 744, 750 (3d Cir. 2007), the complaint must allege facts sufficient to "raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact)," Bell Atlantic Corp. v. Twombly, 127 S. Ct. 1955, 1964 (2007) (internal citations omitted). In addition, while the Court must accept as true all factual allegations in the complaint for the purposes of a motion to dismiss pursuant to Rule 12(b)(6), the Court is "not bound to accept as true a legal conclusion couched as a factual allegation." Papasan v. Allain, 478 U.S. 265, 286 (1986).

## III.    DISCUSSION

### A.     Implied Contractual Duty of Good Faith

The first issue before the Court is whether Pennsylvania law recognizes an implied contractual duty of good faith and fair dealing in the context of suretyship. The Court holds that it does.

Under Pennsylvania law, a suretyship is "evidenced by a contract and represents a three-party association where a creditor is entitled to performance of a contractual duty by the principal debtor or alternatively, if the debtor defaults, by the debtor's surety." Reliance Ins. Co. v. Penn Paving, Inc., 734 A.2d 833, 836 (Pa. 1999) (quoting Gen'l Equipment Mfrs. v. Westfield Ins. Co., 635 A.2d 173, 180 (Pa. Super. Ct. 1993)). Two elements of a suretyship are essential to the present discussion: (1) the existence of a contract; and (2) the existence of a tripartite relationship.

Section 205 of the Second Restatement of Contracts provides that "[e]very contract imposes upon each party a duty of good faith and fair dealing in its performance and its enforcement." Restatement (Second) of Contracts § 205. Although the Pennsylvania Supreme Court has never explicitly adopted § 205, the court has recently indicated approval of the provision. Specifically, in Ash v. Continental Insurance Co., 932 A.2d 877 (Pa. 2007), the court noted that a decision from the United States District Court for the Eastern District of Pennsylvania, Fraser v. Nationwide Mutual Insurance Co., 135 F. Supp. 2d 623 (E.D. Pa. 2001), had "reconciled the conflicting case law" among Pennsylvania's lower courts concerning the existence of implied covenants of good faith and fair dealing, Ash, 932 A.2d at 883 n.2. The reconciled approach in Fraser holds that "[u]nder Pennsylvania Law, a covenant of good faith and fair dealing is implied in every contract. However, it does not create a cause of action in every case." Fraser, 135 F. Supp. 2d at 643. Although the Supreme Court declined to "engage in a discussion of th[e] issue," Ash, 932 A.2d at 883 n.2, this Court predicts that the Supreme Court would follow Fraser and § 205 of the Second Restatement and hold that every contract includes an implied covenant of good faith and fair dealing. Because a suretyship requires a

contract, it follows that a covenant of good faith and fair dealing is implied in the performance of surety agreement at issue in the present case.

From Western's briefs, it does not appear that Western substantially disputes that such an implied duty exists; rather, it argues that such a duty provides WGG only with a defense to indemnification because Pennsylvania law does not recognize a *cause of action* for a bad-faith conduct in suretyships. In this respect, Western misunderstands WGG's claim. Pennsylvania courts have recognized, in the insurance context, that an insured may bring a "bad-faith" claim sounding in *tort* under the Pennsylvania bad-faith statute, 42 Pa. Cons. Stat. § 8371, or a "common law cause of action for breach of the *contractual* duty of good faith." Ash, 932 A.2d at 884 (emphasis added). In the surety context, courts have held that no cause of action exists for bad-faith claims sounding in tort. See, e.g. Intercon Constr. Inc. v. Williamsport Mun. Water Auth., No. 4:07-1360, 2008 WL 239554, at *3 (M.D. Pa. Jan. 28, 2008) (holding that "a surety cannot be held liable for bad faith under § 8371"); see also Superior Precast, Inc. v. Safeco Ins. Co. of Am., 71 F. Supp. 2d 438, 454 (E.D. Pa. 1999) (same).

WGG is not asserting a bad-faith claim sounding in tort. It is asserting a common-law breach of contract claim based upon a breach of the implied covenant of good faith and fair dealing, and such a claim is cognizable under Pennsylvania law. Accordingly, Western's first argument fails.

### B.     Whether WGG Adequately Pleaded Bad Faith

The second issue before the Court is whether, in light of the express terms of the contracts at issue, WGG has pleaded sufficient facts to state a claim that Western breached its contractual duty to act in good faith.

First, WGG alleges that Western breached its duty of good faith by failing to either secure independent counsel or recommend that WGG seek independent counsel when WGG advanced its counterclaim against Northern. Similarly, WGG alleges that "Ewing, acting as Western's counsel and agent, obtained a Waiver from WGG, without advising [WGG] to have independent counsel review said Waiver." (A&C ¶ 67.) Western responds that it had no such duty and that any obligation to report a conflict of interest existed for Western's benefit—not WGG's. Under the terms of the tendering agreement, the parties agreed that if Ewing learned of a potential conflict of interest he would advise Western—not WGG—of any conflict and allow Western to decide whether to seek separate counsel. (A&C Ex. C.) In its brief, WGG implicitly concedes that the contract imposed such an obligation on Ewing, but argues that "[t]he Counterclaim is rife with well pled facts that Mr. Ewing compromised his position favorably to Western and to WGG's detriment and Mr. Ewing was acting, at best, as a 'dual agent' of both entities." (Doc. No. 13, at 8.)

With respect to WGG's claim that Western settled the counterclaim in the WGG Lawsuit in bad faith and over Carlson's objections, the Court finds that WGG has stated a claim. As a threshold matter, the parties disagree about Western's claimed authority under the indemnity agreement to settle WGG's counterclaim. But even assuming that Western had the authority to settle the counterclaim, WGG can still claim that Western did not settle the claim *in accordance with its duty of good faith*. WGG alleges that it had a valid counterclaim, that Western knew the counterclaim was meritorious, and settled the case with complete disregard for WGG's rights and to WGG's detriment. Based on a review of the complaint, the Court finds that WGG adequately pleaded that Western breached a contractual duty to act in good faith when it settled

WGG's purportedly valid counterclaim over the objection of Carlson and WGG. As such, Western's second argument in support of its motion to dismiss the counterclaim fails.

## IV. CONCLUSION

For the foregoing reasons, the Court will deny Western's motion to dismiss the counterclaim. An appropriate order follows.

# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **WESTERN SURETY CO.,** | : | |
| **Plaintiff** | : | Civil Action No. 1:07-CV-1551 |
| | : | |
| **v.** | : | (Chief Judge Kane) |
| | : | |
| **WGG, INC., et al.,** | : | |
| **Defendants** | : | |

## ORDER

**AND NOW**, on this 28th day of January, 2009, for the reasons set forth in the accompanying memorandum, **IT IS HEREBY ORDERED THAT** Plaintiff's motion to dismiss Defendants' amended counterclaim (Doc. No. 11) is **DENIED**.

    S/ Yvette Kane
Yvette Kane, Chief Judge
United States District Court
Middle District of Pennsylvania